FRANCIS S. DENNEY, INC., Plaintiff,

v.

I.S. LABORATORIES, INC., and H. Allen Lightman, Defendants.

No. 90 Civ. 1330 (KTD).

United States District Court, S.D. New York.

April 6, 1990.

Smith, Steibel, Alexander & Saskor, P.C., New York City, for plaintiff; Paul S. Owens, of counsel.

Sughrue, Mion, Zinn, MacPeak & Seas, Washington, D.C., for plaintiff Pro Hac Vice; Cynthia Clarke Weber, of counsel.

A. Martin Stuchiner, New York City, for defendants.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Francis S. Denney, Inc. ("Denney"), a Delaware corporation, brings by Order to Show Cause this motion for a preliminary injunction against defendants I.S. Laboratories ("I.S. Labs"), a New York corporation, and its principal H. Allen Lightman to enjoin their further use of certain trademarks and copyrights. A hearing on this matter was held March 22 and 27, 1990. At the conclusion of the hearing, I granted a temporary restraining order and a preliminary injunction, with

written findings to follow, on the condition that Denney post bond in the amount of $500. Although Denney's request for expedited prehearing discovery was granted, Lightman failed to comply as ordered, claiming improper service of process.[1] The following constitutes my findings of fact and conclusions of law in connection with the issuance of the preliminary injunction.

## FACTS

This is an action for trade dress and trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a) (1985 and Supp. III 1990). Additionally, Denney alleges unfair competition and deceptive trade practices in violation of N.Y.Gen.Bus.Law § 349 (McKinney 1988 & Supp.1990). At issue in this action are a line of cosmetic cleansers and facial creams packaged in distinctive trade dress and marketed under the copyrighted trademarks SHORELL, and IRMA SHORELL.

The original IRMA SHORELL skin-care line was created by Dr. I. Daniel Shorell in the early 1960's. Dr. Shorell registered the products under the trademark IRMA SHORELL, his daughter's name. Irma Shorell, Inc. and Shorell Products Corp. were formed in the early 1960's solely to market the IRMA SHORELL line. Both corporations are controlled by Lightman, Irma Shorell's husband. One of Lightman's duties was to develop packaging designs for and market the SHORELL product line. All of the witnesses, including Lightman, testified at the hearing that the trademarked packaging is widely associated with the SHORELL name. Moreover, there was testimony that because the SHO-

RELL products are upscale, marketed to such department stores as Neiman Marcus and Saks Fifth Avenue, that the SHORELL product name and package designs were trademarked, among other reasons, to maintain the quality of the product and the recognition and good will attendant to its name.

Pursuant to the Agreement for Purchase and Sale of Assets ("the 1985 Agreement"), dated June 19, 1985, Lightman and his wife, Irma Shorell, and corporations controlled by them, sold the IRMA SHORELL trademark, IRMA SHORELL business assets, and all of the goodwill attendant the IRMA SHORELL name to the New York corporation of Alfin Fragrances, Inc. ("Alfin"), its heirs and assigns. Exh. 6 and Sched. A annexed to Devlin Affid. The 1985 Agreement, in part, provided:

> Sellers will sell, convey, transfer assign and deliver, or cause to be delivered, to Buyer and buyer will purchase and acquire from Sellers, as a going concern, all (except as provided in Section 1(b))[2] of the properties and assets of either or both of Sellers existing as of the Closing Date, both tangible and intangible, wherever located, including ... (i) all good and saleable inventory; [and] (ii) all good will, trademarks, trade names, brand names, servicemarks, logos and copyrights used in the Business (including without limitation all rights to the trademarks "Irma Shorell's" and "Irma Shorell" and the consent of Shorell to the use of her name related thereto).

Plaintiff's Trial Exh. 17.

On July 31, 1987, Denney acquired all ownership rights to the IRMA SHORELL

---

1. H. Allen Lightman refused to comply with the court's order granting Denney expedited discovery on the basis that Denney failed to serve Lightman properly with the Order to Show Cause. Specifically, Lightman challenges the process server's method of delivery, claiming that such service denied Lightman due notice because the document was simply left outside the door to his residence. At the preliminary injunction hearing, however, the process server testified that when Lightman was approached in person, he slammed the door on the process server in an effort to evade service. Adequate personal delivery is established on a person of suitable age and discretion, who knowingly or wilfully refuses to open the door to accept ser-

vice of process, by simply leaving the document outside the door. N.Y.Civ.Prac.L. & R. § 308(2) (McKinneys 1980 & Supp.1990); SIEGEL, NEW YORK PRACTICE (West Ed.1978 and Supp. 1987) (citing: *Bossuk v. Steinberg*, 58 N.Y.2d 916, 460 N.Y.S.2d 509, 447 N.E.2d 56 (1983)). On that basis, service was proper and Lightman was properly apprised of the hearing.

2. Assets which were not sold include: (i) accounts and loans receivable; (ii) inventory which is not of saleable quality; (iii) cash on hand; (iv) insurance claims; and (v) Seller's real property leases.

trademark and product line from Alfin pursuant to a written agreement ("the 1987 Agreement"). The 1987 Agreement, provides, in pertinent part:

Seller is the sole and exclusive owner of all rights to the Irma Shorell product line and of the logo, trademark and trade name relating to the Irma Shorell product line, and, upon execution and delivery of this Agreement, all right, title and interest in and to the logo, trademark and trade name relating to the Irma Shorell product line, and all other rights with respect to the Irma Shorell product line, will be acquired by Purchaser free and clear of any Liens.

Asset Purchase Agreement, Exh. 5 annexed to Devlin Affid.

Between August 1987 and October 1989, Lightman and I.S. Labs were Denney customers, purchasing Denney's SHORELL products for resale. Plaintiff's Memorandum in Support of Preliminary Injunction at 7. In 1989, Denney began receiving telephone calls from its customers who claimed to have received several confusing mailings, referring to I.S. Labs. Lightman had sent the materials to Denney customers, gleaned from customer lists which Alfin had previously sold Denney, and had signed them as "President of I.S." The materials solicited sales of a new Lightman line of products strikingly similar in appearance to the SHORELL line.

In February 1990, Denney's counsel sent Lightman and I.S. Labs a cease and desist letter. That letter was ignored. Denney now seeks to enjoin Lightman and I.S. Labs from further actions in contravention of the 1985 and 1987 Agreements for the sale of SHORELL trademarks and trade dress.

## DISCUSSION

■ As a threshold matter, it must be determined whether Lightman was at anytime released from the contractual restraints on his use of the SHORELL trademark imposed by the 1985 Agreement. Lightman presents no evidence of a release but contends that such restraints inured only to the benefit of the immediate buyer, Alfin, and thus were released upon Alfin's sale of its assets to Denney. However, neither the evidence presented nor the terms of the 1985 Agreement suggest that Lightman was released from his obligation to forever refrain from using the SHORELL trademarks and trade dress if Alfin sold its rights to a third party.

Simply because the 1985 Agreement uses the term "Buyer" and does not include the terms "heirs and assigns" does not render rights under it unassignable. The 1985 Agreement in no way restricts the alienability and assignability of the rights to the SHORELL trademark and trade dress. Alfin became absolutely and unreservedly vested in all of SHORELL's trademarks under the terms of the 1985 Agreement. Therefore, when Alfin sold SHORELL to Denney in 1987, Denney became absolutely and unreservedly vested in all of Alfin's rights to SHORELL.[3]

Having found that Lightman remains bound by the restraints imposed by the 1985 Agreement, it must then be determined whether he has infringed the SHORELL trademarks and trade dress owned by Denney. To succeed on a motion for a preliminary injunction, Denney must establish irreparable harm and either: (a) a likelihood of success on the merits; or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships in Denney's favor. *See Home Box Office v. Showtime/The Movie Channel,* 832 F.2d 1311, 1314 (2d Cir.1987). The Second Circuit has consistently determined that, "[i]n the preliminary injunction context [for trademark cases,] a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm." *Id.* (citing *Standard &*

---

**3.** Lightman also argued that because photographs used in certain advertisements for his line were taken in the 1960's and derived solely from pre–1985 marketing development efforts, that those advertisements did not violate restraints imposed on him by the 1985 Agreement. However, the images contained in the photographs were part of the SHORELL assets sold to Alfin in 1985.

*Poor's Corp. v. Commodity Exchange, Inc.*, 683 F.2d 704, 708 (2d Cir.1982)). The district court has broad discretion to issue a preliminary injunction once a likelihood of confusion is established. *Charles of the Ritz Group v. Quality King Distrib.*, 832 F.2d 1317 (2d Cir.1987).

■ Trade dress of a product refers to a product's packaging, labeling, or, under certain circumstances, design. *Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 974 (2d Cir.1987). A plaintiff must satisfy two elements in order to succeed on its trade dress infringement claim: (1) that the trade dress of its product is widely recognized and acquired a secondary meaning in the marketplace; and (2) that the design of the competitor's product is confusingly similar to that of the plaintiff's. *Id.* The overall similarity of the total image between two otherwise separate products determines whether the infringer's product is likely to be confused by consumers as having derived from the same source. *Id.* A product's trade dress has acquired a secondary meaning, or independent recognition in the marketplace, "when the purchasing public associates that dress with a single producer or source. rather than just with the product itself." *Le Sportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 78 (2d Cir.1985).

■ The testimony and evidence admitted at the hearing amply support a finding that Lightman's products are likely to cause consumer confusion with the SHORELL line. Indeed, that is exactly what was intended by Lightman. Although the descriptive names of each SHORELL skincare product differs from the names of corresponding products in Lightman's skincare line, Lightman's packaging is strikingly similar to Denney's trademarked packaging. Moreover, the SHORELL name appears on Lightman's products, albeit as DR. I.D. SHORELL. Additionally, Lightman testified that he used the same design schemes for his line as the one developed for the original SHORELL line in 1960.

Willard R. Devlin, Denney's Chief Financial Officer, Secretary and Treasurer, testified that Lightman's line of products and marketing tactics have succeeded in causing massive confusion to SHORELL's purchasing public and that Denney has suffered a loss in profits as a result. According to Devlin, Lightman's products are less expensive and several customers have chosen to abandon the SHORELL line for what they believe are products of like and similar quality. Devlin testified that Denney's sales declined from $582,773, realized in 1988, to $429,000 in 1989. Additionally, returns of products to Denney rose in amount from $13,000 in 1988 to $25,000 in 1989. Denney maintains that because IRMA SHORELL customers never before received mailings during Denney's tenure of ownership, that customers had nothing with which to compare Lightman's and I.S. Lab's mailings. As such, Lightman's mailed advertisements could naturally be construed by Denney customers to be Denney's brainchild.

Devlin further attests that customer inquiries rose markedly and in direct correlation to each such Lightman mailing. Denney customers were allegedly confused as to whether Denney or I.S. Labs owned the "real IRMA SHORELL company," and whether certain creams and skin treatments, developed by Lightman, were Denney products. As an example, Devlin specifically testified that customers confused Lightman's "Formula M 7" for Denney's IRMA SHORELL "Contour/35," an older and successful product. The packaging designs of both products appear almost identical to one another and are distinguishable by title and reverse letter coloring only. Even the lettering is in a similarly fashioned block design. *See* Plaintiff's Hrg. Exhs. 7, 30.

The record is replete with evidence that Denney owned the SHORELL trademark and that Lightman's new line of products were directly modeled after Denney's product line. Specifically, I find that Lightman's "DR. I.D. SHORELL Exfoliator/M 7" is modeled directly after and parallels the look of Denney's "IRMA SHORELL Dermabrase/35," thus violating Denney's trademark and trade dress. Plaintiff's Trial Exhs. 6, 28. The two products are pack-

aged in similar eight-ounce containers with black and white block lettering and a prominent display of the SHORELL name. Moreover, a similarly worded product description and directions for use appear on the back of the bottle. Other of Lightman's products violate Denney's trademarks in a like fashion. "DR. I.D. SHORELL Facial Cleansing Formula" is substantially similar to and violates "IRMA SHORELL Formula for Cleansing" trademark, although the colors of the container lids differ slightly. Plaintiff's Trial Exhs. 5, 29. "DR. I.D. SHORELL Moisture M 7" is obviously fashioned after "IRMA SHORELL's Moisture/35." Plaintiff's Trial Exhs. 8, 31. And finally, "DR. I.D. SHORELL Formula M 7" package design is not only substantially similar looking to "IRMA SHORELL's Contour/35," but, similar advertising on the packaging touts that it was developed by a world renowned plastic surgeon. Plaintiff's Trial Exhs. 3, 7.

Considering the fact that Lightman admitted to having modeled his line of products after SHORELL designs from the 1960's, the trade dress of Lightman's products is admittedly substantially similar to that of Denney's. Moreover, Devlin's testimony regarding letter correspondences is direct evidence that Denney customers confused the two lines of products as having derived from the same source. Because Lightman's line of products used the name SHORELL, while simultaneously mimicking SHORELL's trade dress and skin-care product line, I find that there is a likelihood of confusion of the Lightman and Denney products. The similarity of the total image of two otherwise separate products, is dispositive that consumers are likely to determine that Lightman's and Denney's line of products derived from the same source. Finding such likelihood of confusion establishes the requisite likelihood of success on the merits as well as risk of irreparable harm necessary to support the issuance of a preliminary injunction.

For the foregoing reasons, Denney's application for a preliminary injunction is granted in all respects. Lightman and I.S. Labs are enjoined from present and further use of the following:

1. the names IRMA SHORELL, I.S. LABORATORIES, IRMA, SHORELL, DR. I.D. SHORELL, or names which include SHORELL in any way whatsoever.

2. the black and white trade dress on packaging, products and advertising.

3. reference to Dr. Daniel Shorell, and the history of the IRMA SHORELL products and companies.

4. use of old IRMA SHORELL publicity and advertising material.

5. reference to Lightman's prior connection to Irma Shorell, the IRMA SHORELL products and companies and Dr. Shorell.

6. comparative advertising between Defendants' products and Denney's IRMA SHORELL products.

Furthermore, Lightman and I.S. Labs are hereby ordered to provide the Court with copies of all mailing lists used to solicit customers for products of I.S. Labs, and offer up for destruction all documents, containers and products which display the SHORELL name in any form or the plaintiff's trade dress.

SO ORDERED.