**FRANCIS S. DENNEY, INC., Plaintiff,**

v.

**I.S. LABORATORIES, INC., and H. Allen Lightman, Defendants.**

**No. 90 Civ. 1330 (KTD).**

United States District Court, S.D. New York.

Dec. 13, 1990.

---

Smith, Steibel, Alexander & Saskor, P.C., New York City (Paul S. Owens, of counsel), for plaintiff.

Sughrue, Mion, Zinn, Macpeak & Seas, Washington, D.C. (Cynthia Clarke Weber, of counsel), for plaintiff pro hac vice.

Menaker & Herrmann, New York City (Samuel F. Abernethy, of counsel), for defendants.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, Francis Denney, Inc. ("Denney") brought this action, under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), as well as New York statutory and common law for trademark infringement and unfair competition. Denney moved, by Order to Show Cause, for a preliminary injunction against defendants I.S. Labs and its principal H. Allen Lightman. After a hearing was conducted in this matter, I rendered an opinion on April 6, 1990, 737 F.Supp. 247, in which I preliminarily enjoined Lightman from replicating the trade dress and name identification of a line of moisturizers and skin-care cosmetic products, known as the IRMA SHORELL line, which was developed and produced in contravention to Denney's trademark. I will not repeat all of the facts from that opinion, but, those facts and findings abide here. Denney now moves to dismiss Lightman's counterclaims or, in the alternative, for partial summary judgment on the issue of liability, seeking also entry of a permanent injunction.

## FACTS

The original IRMA SHORELL skin-care line was created by Dr. I. Daniel Shorell in the early 1960's. Dr. Shorell registered the products under the trademark IRMA SHORELL, his daughter's name. Irma Shorell, Inc. and Shorell Products Corp. were formed in the early 1960's solely to market the IRMA SHORELL line. Both corporations were controlled by Lightman, Irma Shorell's husband. Lightman was also primarily responsible for marketing and designing the packaging of products. The record from the hearing for a preliminary injunction indicates that the trademarked packaging is widely associated with the SHORELL name.

Pursuant to an Agreement for Purchase and Sale of Assets, dated June 19, 1985, Lightman and his wife, Irma Shorell, and corporations controlled by them, sold the IRMA SHORELL trademark, IRMA SHORELL business assets, and all of the goodwill attendant to the IRMA SHORELL name to the New York corporation of Alfin Fragrances, Inc. ("Alfin"), its heirs and assigns. Exh. 6 and Sched. A annexed to Devlin Affid. On July 31, 1987, Denney acquired all ownership rights to the IRMA SHORELL trademark and product line from Alfin pursuant to a written agreement.

Between August 1987 and October 1989, Lightman and I.S. Labs were Denney customers, purchasing Denney's SHORELL products for resale. Plaintiff's Memorandum in Support of Preliminary Injunction at 7. Sometime in 1989, Lightman began developing and marketing a line of products under the name I.S. Labs in competition with Denney. Purportedly, Lightman conceived his own line of skin-care products because Denney, *inter alia*, allegedly failed to respond to various complaints Lightman had regarding late or defective shipments of product and failure to timely cure or credit losses incurred by Lightman at the time. Instead of maintaining a relationship with Denney, Lightman undertook to develop his own line of products in competition with Denney's line.

Soon after Lightman developed his own line of products, Denney began receiving telephone calls from its customers who claimed to have received several confusing mailings, referring to the new company, I.S. Labs. Lightman had sent the materials to Denney customers, gleaned from customer lists which Alfin had previously sold Denney, and had signed them as "Presi-

dent of I.S." The materials solicited sales of a new Lightman line of products strikingly similar in appearance to the SHORELL line.

On April 6, 1990, Lightman was preliminarily enjoined from replicating the trade dress and name identification of a line of moisturizers and skin-care cosmetic products, known as the IRMA SHORELL line which he developed and produced in contravention to Denney's trademark. He was also enjoined from violating Denney's ownership rights in the goodwill attendant to the SHORELL product.

## DISCUSSION

■ Denney seeks partial summary judgment and a permanent injunction. Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. All doubts are to be resolved against the movant and all favorable inferences are to be drawn in favor of the party against whom judgment is sought. *Branko International, Inc. v. Saudi Arabian Airlines*, 704 F.Supp. 386, 389 (S.D.N.Y.1989), *aff'd without op.*, 880 F.2d 1318 (2d Cir.1989). Moreover, the standard for a permanent injunction is essentially the same as for a preliminary injunction, except that for a permanent injunction a plaintiff must demonstrate actual success on the merits. *ER Holdings, Inc. v. Norton Company*, 735 F.Supp. 1094 (D.Mass.1990). The record in this matter is complete on the issue of liability.

■ With regard to trademark and trade dress infringement, my previous findings make clear that Lightman's products were confusingly similar to the trademarks which Lightman had sold to Denney's predecessor, Alfin. Lightman's contention that Denney never held trademarks or rights in the trademarks since Alfin, the intermediary company, sold rights to Denney makes little sense.[1] Simply because

Lightman was not a signatory to the Alfin–Denney agreement does not mean that Lightman gets a reversion of the trademarks. Once a trademark is alienated with no reservation of rights in the future, as is the case here, reversion rights do not miraculously come into play. Lightman's contention that he never alienated his rights in the advertising that he developed in the 1960's for the SHORELL line also defies logic. Whatever rights Lightman thought he was secretly reserving to himself must fall to an objective reading of the contract. Exploiting advertising in the same trade dress as was alienated in the Lightman–Alfin contract is improper. Lightman must be enjoined permanently from producing a line of products confusingly similar to Denney's SHORELL line. Furthermore, Lightman's problems with the quality of certain SHORELL product shipments from Denney in 1989 does not give him license to exploit the very same trademarks, trade dress, and advertising alienated by him in 1985. Thus, no question of fact remains at this juncture with respect to Lightman's liability for trademark and trade dress infringements.

■ To prevail on claims of unfair competition and trademark infringement, plaintiffs must prove by a preponderance of the credible evidence that there is a likelihood that an appreciable number of ordinary prudent purchasers are likely to be confused as to the source of goods in question. *Smithkline Beckman Corp. v. Proctor & Gamble Co.*, 591 F.Supp. 1229, 1235 (N.D.N.Y.1984), *aff'd without op.*, 755 F.2d 914 (2d Cir.1985). While actual confusion to the public is not necessary to establish that confusion is likely, instances of actual confusion are extremely persuasive evidence of likelihood of confusion. *Gucci v. Gucci Shops, Inc.*, 688 F.Supp. 916, 926 (S.D.N.Y.1988). Although not dispositive, evidence of intentional copying "bolsters a finding of consumer confusion." *Charles of Ritz Group Ltd. v. Quality King Dis-*

---

[1]. These very same trademarks, ultimately purchased by Denney, are the subject of four incontestible registrations for IRMA SHORELL and variations thereof. These registrations are prima facie evidence that Denney is the owner of the marks covered by the registrations, that the registrations are valid, and that Denney has the exclusive right to use the marks in connection with the goods covered by the registrations. 15 U.S.C. § 1057(b) (1982).

*tributors, Inc.*, 832 F.2d 1317 at 1322 (2d Cir.1987) (citing *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1227 (2d Cir.1987)). Relief has been granted in New York in a wide variety of situations to insure that "one may not misappropriate the results of the skill, expenditure and labors of a competitor." *Flexitized, Inc. v. National Flexitized Corp.*, 335 F.2d 774 (2d Cir.1964), *cert. denied*, 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965).

■ It is not disputed that there have been innumerable instances of actual confusion as evidenced by telephone inquiries as well as misdirected and cancelled orders directed at Denney in favor of Lightman's products. In addition to instances of actual confusion, Denney has lost sales to Lightman simply because customers think they are buying IRMA SHORELL when they are buying I.S. Labs products, and believe that SHORELL is the genuine source of Lightman's line of products.[2]

Moreover, it is clear that Lightman's advertisements derived from the very same advertising and trade dress elements which he sold to Alfin and which Alfin sold to Denney. Lightman does not deny repeated acts of comparative advertising. He disputes only the legal consequences and effect of these acts, therefore, the only matter to be resolved is a question of law, namely, whether defendants' acts constitute unfair competition. I find they do. Lightman undertook to target the same group of consumers as were purchasing the SHORELL line. Once Alfin alienated its rights in the SHORELL trademark, however, rights to exploit the SHORELL image and advertising never reverted to Lightman.

■ Lightman contends that his actions did not constitute infringement or unfair competition for they were not undertaken in bad faith. Good faith is no de-

fense to trademark infringement or unfair competition. A showing of bad faith, in and of itself, may establish infringement since "intentional copying raises a presumption that the second comer intended to create a confusing similarity." *Charles of Ritz Group, Ltd. v. Quality King Distributors, Inc.*, 832 F.2d 1317, 1322 (2d Cir. 1987) (citing *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir.1987)). Once Lightman sold the mark, his later use was as a second comer. *See Forum Corp. of North America v. Forum Ltd.*, 903 F.2d 434, 440 (7th Cir.1990) (citations omitted) ("It is the second user's responsibility to avoid confusion in its choice of a trademark, and that responsibility must include choosing a mark whose salient portion would not likely be confused with a first user's mark."). Having employed trade dress similar to that used for SHORELL and using advertising schemes that referred to IRMA SHORELL products from the 1960's, Lightman obviously intended to confuse Denney customers and unfairly solicit trade on its goodwill. For example, one ad read: "If you liked Irma Shorell's CONTOUR/35 you will love Dr. I. Daniel Shorell's FORMULA M7, the original night creme first introduced by Henry Bendel in Saks Fifth Avenue in 1961." Use of such advertising, linked with the obvious similarity of the two products, leads me to find that Lightman, with scienter, intended to confuse the consuming public as to the source of his new line of products.

■ A likelihood of confusion may be ascertained where the trademark is strong, the products are competing in proximate markets, evidence of actual confusion exists on the record, and lack of good faith may be ascribed to the infringer. *See Charles of Ritz Group*, 832 F.2d at 1323. Here, the SHORELL trademark is a strong one, highly recognized within the target market group. Denney products were and would be in direct competition with Light-

---

**2.** Whether Denney's trade dress has acquired a secondary meaning in the consuming public's eye is no longer the test of preference in the Second Circuit. Because the varieties of advertising and display involved in trade dress claims are potentially endless, the important test determines likelihood of confusion in lieu of whether a product has acquired a secondary meaning in the consuming community. *See Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 953 (2d Cir.1980), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982).

man's products. Evidence of actual confusion was adduced here and at the preliminary injunction stage. I find that Lightman's imprudent exploitation of the history of IRMA SHORELL products constitutes acts taken in bad faith as well as unfair competition which is both deceptive and misleading.

■ Having determined that no genuine issues of material fact exist on the issue of liability or regarding the factors relevant to determining a likelihood of confusion at bar, I find Denney is entitled to summary judgment and a permanent injunction as a matter of law. Once a business sells its goodwill and trademarks, the prior owner may no longer refer to the history of the business in attempts to market competing products. *Levitt Corp. v. Levitt*, 593 F.2d 463 (2d Cir.1979) (where "infringing party has previously sold his business, including use of his name, and its goodwill, to the plaintiff, sweeping injunctive relief is [ ] tolerable.").[3] Thus, Lightman must be forever enjoined from exploiting the goodwill attendant to the SHORELL name.

For the foregoing reasons, Denney's motion for partial summary judgment and a permanent injunction is granted. Lightman is hereby permanently enjoined from further infringements of Denney's ownership rights in the IRMA SHORELL product line. All motions in opposition are denied. This case is hereby referred to a magistrate whereby Lightman is ordered, pursuant to 15 U.S.C. § 1117, to produce an accounting of all infringing sales. Any request for attorney's fees is denied at this time.

SO ORDERED.

---

**3.** Lightman submits further opposition to Denney's motion for summary judgment, advancing a myriad of reasons which are not germane to the issues at bar. None of his remaining assertions create questions of fact sufficient to withstand Denney's motion for summary judgment.