**INTERNATIONAL DATA GROUP, INC., Plaintiff,**

v.

**J & R ELECTRONICS, INC., Defendant.**

**No. 91 Civ. 1897 (KTD).**

United States District Court, S.D. New York.

July 1, 1992.

Schoeman, Marsh & Updike, New York City (Beth L. Kaufman, Mark D. Miller, of counsel), Spencer & Frank, Washington, D.C. (Mark Harrison, George H. Spencer, Jerold I. Schneider, of counsel), for plaintiff.

Groman, Ross, & Wilensky & Silverberg, P.C., Carle Place, N.Y. (Allison C. Collard, Thomas M. Galgano, Collard, Roe & Galgano, P.C., Roslyn, N.Y., of counsel), for defendant.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff International Data Group, Inc. ("IDG"), commenced this action against defendant J & R Electronics, Inc. ("J & R") alleging: (1) federal trademark infringement, 15 U.S.C. §§ 1058 & 1065; (2) false designation of origin, 15 U.S.C. § 1125(a); (3) unfair competition, 15 U.S.C. § 1125(a); (4) trademark dilution under § 368–d of New York General Business Law; (5) false advertising under New York General Busi-

ness Law § 350; and (6) common law trademark infringement and unfair competition.

J & R now moves for summary judgment, pursuant to Fed.R.Civ.P. 56, on each of IDG's claims. IDG cross-moves for summary judgment on its claim of trademark dilution.

## FACTS

The following facts are undisputed except where indicated.[1] IDG, a Massachusetts corporation, publishes a weekly trade newspaper, "Computerworld", through its wholly-owned subsidiary, C.W. Publishing, Inc. Since September 17, 1968, IDG has been the owner of the registered trademark "Computerworld".[2] IDG's uses the mark for the sale and marketing of its newspaper, and direct-response card advertising for subscription orders and advertising.

Since 1981, the number of weekly subscribers in New York to the Computerworld newspaper has ranged from 10,000 to 12,000. It reaches approximately 135,000 persons in the United States. The newspaper is made up of several sections, some of which are used, in part, to advertise computer products and services. Compl. at ¶ 9.

J & R is the owner of two U.S. trademark registrations for the marks "J & R" and "J & R Music World." J & R uses the mark for retail and mail order services in connection with its music and electronics business. In 1985, J & R began selling computer equipment under its original name, J & R Music World. Three years later, the company started using the logo "J & R Computer World" in advertisements for the store's computer products. IN January, 1990, J & R opened a store under the name J & R Computer World. J & R's Computer World logo is presented with the same typeface and style as its Music World logo. The J & R portion of

---

**1.** Except where indicated, the following facts are undisputed and derive from the parties' respective statements pursuant to Local Civil Rule 3(g).

**2.** The mark has become incontestable. Compl. at Para. 7. Under the Trademark Act of 1946, 15 U.S.C. § 1065, an incontestable mark is one that has been in continuous use for five consecutive years subsequent to the date of registration and is still in use in commerce.

the logo is surrounded by a racetrack in both. Aff. of Rachelle Friedman at 85. J & R has also used J & R Office World and J & R Corporate World logos which are similar in design to the logo at issue here.

Advertising for the J & R stores consists of full-page advertisements in the New York Times twice a week. On Sunday the ad's heading reads J & R Music World and, on Tuesday, it contains the J & R Computer World logo. Other means of advertising include flyers, in-store signs, employee's jackets, and advertisements in more than ten trade and general magazines. Finally, the company mails about one million catalogues every six weeks. The catalogs advertise all of J & R's products, including stereos, computers, and office equipment. Approximately 42 percent of J & R's sales involve computer products.

On or about June 12, 1989, J & R filed a trademark application to register the J & R Computer World mark. Following written objection by IDG, J & R withdrew its application. Subsequently, IDG requested that J & R cease using the name J & R Computer World in its business. J & R continued its use of the name, and IDG commenced this litigation by a complaint dated March 19, 1991.

## DISCUSSION

Summary judgment is proper only where the movant shows that there is no genuine issue of material fact, and that he is entitled to summary judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining whether there is a genuine issue of material fact, the court must construe the evidence and draw all inferences in favor of the nonmovant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). To defeat a properly asserted summary judgment motion, however, the nonmovant must demonstrate the existence of material issues of fact to be resolved at trial on the merits. *Williams*

*v. Smith*, 781 F.2d 319, 323 (2d Cir.1986). In meeting this burden of proof, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

To prevail on claims of federal trademark infringement, false designation of origin, unfair competition and common law trademark infringement, a party must prove by a preponderance of the credible evidence the likelihood that an appreciable number of ordinary prudent consumers may be confused as to the source of the goods in question. *Francis S. Denney, Inc. v. I.S. Laboratories*, 758 F.Supp. 140, 143 (S.D.N.Y.1990).[3]

In deciding whether there is a likelihood of confusion, the Second Circuit considers the following seven factors: (a) the strength of the mark at issue; (b) the relatedness or proximity of the services; (c) the similarity of the marks; (d) the likelihood that the prior owner will "bridge the gap;" (e) the quality of the defendant's product; (f) actual confusion; and (g) defendant's good faith in adopting its own mark. *Lang v. Retirement Living Publishing Co., Inc.*, 949 F.2d 576, 580 (2nd Cir.1991) (relying on *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2nd Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961)). I will deal with each factor in turn.

The first factor, the strength of the prior owner's mark, refers to a mark's ability to identify the source from which the goods or services emanated. *McGregor–Doniger Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979). The strength of the mark determines the degree of protection it will be accorded. *Id.* While IDG asserts that its Computerworld publication is a well-known newspaper, it fails to show that an appreciable number of consumers would believe that its newspaper and the J & R computer products emanate from the

---

**3.** The parties agree that under both federal statutory and state common law claims, the analysis is the same.

same source. IDG's failure is due, in part, to the fact that the words the words "Computer World" are not inherently distinctive. Rather, they are commonly used words that serve a descriptive purpose. *See Lang*, 949 F.2d at 581 (extensive third party use of word "choices" renders plaintiff's mark "weak").

Prior to this suit, IDG and its predecessors filed 19 separate legal actions against alleged infringers of the Computerworld trademark. In 18 of these actions, the defendants either changed their name or entered into a stipulation and consent judgment whereby the cases were not decided on their merits. Only one action, *C.W. Communications, Inc. v. International Research Services, Inc.*, D.C. Civil Action 84–890, *aff'd*, 862 F.2d 307 (3rd Cir. 1988), resulted in a final determination in favor of IDG. The result in that case is not binding on my determination here. The very fact that IDG has found so many alleged infringers of the mark weighs *against* a finding that the mark is a strong one. Thus, IDG has failed to demonstrate the "strength" of the mark.

The relatedness or proximity factor focuses on the likelihood that customers may be confused as to the product's source. *McGregor*, 599 F.2d at 1134. The parties in the instant case provide different goods and services. IDG is a Massachusetts corporation that targets its use of the mark to the sale and marketing of its newspaper. It has never used the mark in conjunction with any mail order catalogue business, nor has the company ever engaged in the sale of computer products. Therefore, any link between the business of the two companies appears too tenuous for a finding of product proximity. Accordingly, no genuine issue of material facts exists with regard to product proximity.

The third factor is the similarity between the two marks in dispute. *Polaroid*, 287 F.2d at 495. This looks to whether the similarity between the two marks is likely to cause confusion among prospective consumers.[4] *McGregor*, 599 F.2d at 1133. Critical to this analysis are the differences in size, layout, style and overall impression of the mark as viewed through the eyes of a reasonable consumer. *C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.*, 753 F.2d 14, 18 (2d Cir.1985). In the instant case, J & R's mark is simply a variation on its original "J & R Music World" logo. The race track border around the name "J & R" is also used in its Computer World logo. IDG's mark has no such border. *See, e.g., Lang*, 949 F.2d at 582. (different typeface of the two marks served to distinguish the two marks). Additionally, J & R presents the words "Computer" and "World" as two separate words, unlike IDG's one-word mark. The general impression created by the marks differs significantly, and there is no genuine issue of material fact on the issue of similarity of the marks and consumer confusion.

I am also required to consider the likelihood that IDG will "bridge the gap" by expanding into the retail or wholesale industry for computer products or services. *See Polaroid*, 287 F.2d at 495. This fourth factor attempts to determine the commercial overlap of business in the future between J & R and IDG. Since IDG has not demonstrated any intention of expanding into the computer retail or wholesale industry, and has provided no evidence that prospective purchasers would assume that it would enter the retail computer market, there is no genuine issue of material fact with regard to this factor.

Turning to the next factor, product quality, both parties appear to agree on the relatively high quality of J & R's products. *Polaroid*, 287 F.2d at 495. The parties, however, view the consequences of this fact differently. J & R asserts that the high quality of its goods and services could only enhance the reputation of IDG's newsletter. Memorandum of Law in Support of

---

**4.** Courts have minimized the importance of the similarity factor. In *Polaroid* itself, for example, Judge Friendly found a strong similarity between the two names ("Polaroid") and ("Polarad"). Nevertheless, the plaintiff's failure to demonstrate evidence of actual confusion outweighed the other factors. 287 F.2d at 495.

Defendant's Motion for Summary Judgment at 15. Conversely, IDG views the high quality of J & R's operation as a "reinforcement" of the likelihood of customer confusion. Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment at 13. Either viewpoint, however, assumes that the products have something in common. I do not agree. Beyond the fact that both companies are involved in the computer industry to some degree, they appear to have little in common. A comparison of the quality of two unrelated products, then, offers little to this analysis.

■ IDG has been unable to report any instances of actual confusion. Although proof of instances of actual confusion is not necessary for a successful claim, such proof is convincing evidence of the likelihood of confusion. *Francis Denney*, 758 F.Supp. at 143. In the instant case, the absence of any evidence of actual confusion indicates that the likelihood is that the ordinary consumer is not likely to be misled or confused as to the source of the goods in question. *McGregor*, 599 F.2d at 1136 (holding that lack of proof of actual confusion may be used to infer that there is also no likelihood of confusion). As a result, I cannot find a genuine issue of material fact concerning actual confusion.

■ The final factor is defendant's good faith in adopting its own mark. This factor considers "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang*, 949 F.2d at 583 (quoting *Edison Brothers Stores, Inc. v. Cosmair, Inc.*, 651 F.Supp. 1547, 1560 (S.D.N.Y.1987)). In this case, the parties are involved in very different aspects of the computer industry. IDG and J & R have two distinct goals in mind: IDG seeks the sale of newspaper subscriptions while J & R promotes the sale of computers. J & R has denied any prior knowledge of the Computerworld newspaper. Aff. of Rachelle Friedman at 62. Most importantly, however, there is no basis for a finding that J & R intended to ride the coattails of the senior user. *See, e.g., Mushroom Mak-*

*ers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 48 (1978) (plaintiff's use of the trademark, "Mushroom", in connection with the sale of women's apparel not infringement of defendant's registered trademark used in defendant's marketing of women's shoes), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). Thus, "even if a mark is registered, the presumption of an exclusive right to use it extends only so far as the goods or services noted in the registration certificate." *Id.* at 48. Here, the goods noted in the registration certificate are trade newspapers. In light of J & R's history of using various J & R World logos and the improbability that the company hoped to capitalize on IDG's reputation, there is no issue of material fact regarding J & R's good faith.

■ In sum, consideration of the *Polaroid* factors indicates no likelihood of confusion. Accordingly, J & R is entitled to summary judgement on counts one, two, three and six of the complaint.

■ Count four of IDG's complaint alleges a violation of New York's Anti–Dilution Statute, (General Business Law § 368–d). Section 368–d requires "likelihood of injury to business reputation or of dilution of the distinctive quality of a mark...." The gravamen of the wrong is injury to a recognized trade name rather than damage resulting from confusion. *Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621 (2d Cir.1983).

■ Under New York law, in order to prove a violation of Section 368–d, IDG must demonstrate that: (1) the Computerworld trademark is of a truly "distinctive quality," *See Sally Gee*, 699 F.2d at 625, and (2) there has been a "whittling down" of its business reputation by J & R's use of the mark. *See Mortellito v. Nina of California, Inc.*, 335 F.Supp. 1288, 1296 (S.D.N.Y.1972); *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 543, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (N.Y.1977).

J & R concedes that the Computerworld mark is distinct for newspapers. Memorandum of Law in Support of Defendant's

Motion for Summary Judgment at 18. However, IDG offers no evidence to suggest that the distinctiveness extends to either retail sales or mail order catalogues. The mark, "Computerworld", therefore, is not sufficiently distinct to warrant protection.

Second, IDG has not submitted any evidence of actual injury to its trade name, reputation, or change in consumer perception as a result of the J & R Computer World logo. Consequently, there has been no "whittling down" of IDG's reputation. In sum, IDG has failed to demonstrate the existence of a genuine issue of material fact on its Section 368–d claim.[5]

█ Count five of IDG's complaint asserts that J & R has engaged in false advertising, in violation of § 350 of the New York General Business Law. To be entitled to relief under a false advertising claim, a plaintiff must not only demonstrate that the advertisement was misleading, but also that it has been injured. *McDonald v. North Shore Yacht Sales, Inc.*, 134 Misc.2d 910, 513 N.Y.S.2d 590 (N.Y.Sup.Ct.1987).

█ Because IDG has failed to prove the existence of a likelihood of confusion, *see* discussion pages 5–11 supra, it cannot demonstrate either that J & R's advertisements are misleading or that it has been injured. Accordingly, J & R is entitled to summary judgment on count five of the complaint.

For the foregoing reasons, J & R's motion for summary judgment is granted in its entirety.

SO ORDERED.

---

5.  In addition to the two-pronged test for distinctiveness, courts have been influenced by the presence or absence of predatory intent by the junior user. *See Sally Gee*, 699 F.2d at 626; *Information Clearinghouse, Inc. v. Find Magazine*, 492 F.Supp. 147, 162 (S.D.N.Y.1980). The evidence in this case indicates that J & R acted in good faith and that its choice of the Computerworld logo was motivated by the belief that a logo similar to the J & R Music World logo will suggest to the public that the two stores are owned and operated by the same company. In sum, there is no evidence of predatory intent.