**SCARVES BY VERA, INC.,**
**Plaintiff-Appellant,**

v.

**TODO IMPORTS LTD. (INC.),**
**Defendant-Appellee.**

**No. 769, Docket 75-7529.**

United States Court of Appeals,
Second Circuit.

Argued May 13, 1976.

Decided Nov. 22, 1976.

Opinion Reassigned on Nov. 1, 1976 to Circuit Judge Lumbard, at the Request of Circuit Judge Timbers.

Walker was entitled at the time Walker met with Luhrs.

1168

Alfred P. O'Hara, New York City (James B. Swire, Lile H. Deinard, William R. Liberman, and Rogers, Hoge & Hills, New York City, on the brief), for plaintiff-appellant.

Henry L. Shenier, New York City (William A. Kinnaman, Jr., and Shenier & O'Connor, New York City, on the brief), for defendant-appellee.

Before LUMBARD and TIMBERS, Circuit Judges, and NEWMAN, District Judge.*

LUMBARD, Circuit Judge:

This appeal raises the familiar problem of determining under what circumstances a trademark owner may protect his trademark against use on products other than those to which the owner has applied it. *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2 Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961); *King Research, Inc. v. Shulton, Inc.*, 454 F.2d 66 (2 Cir.1972). Specifically, we must decide whether plaintiff, who uses the trademark "VERA" on a well-known line of women's scarves, apparel, and linens, is entitled to prevent defendant's use of the same mark on cosmetics and fragrances.

Appeal is from a judgment entered on August 28, 1975 after a two day bench trial in the Southern District of New York, Robert L. Carter, District Judge, dismissing plaintiff's action for trademark infringement and unfair competition. Plaintiff had been seeking injunctive relief, damages and an accounting.

For the reasons stated below we hold that the defendant infringed plaintiff's trademark, and that the plaintiff is entitled to injunctive relief. Accordingly, we reverse and remand.

Plaintiff Scarves by Vera, Inc. is a well known and highly successful fashion designer. Plaintiff designs and manufactures a line of women's signature scarves, medium-high fashion women's sportswear, and a variety of dining room, bedroom and bathroom linens. Defendant Todo Imports Ltd. is a New York corporation which, since 1970, has been the exclusive distributor in New York of certain cosmetics and toiletries manufactured by Vera Perfumeria y Cosmetica, S.A. of Barcelona, Spain (Vera, S.A.).

On July 7, 1971, plaintiff commenced this action for trademark infringement and unfair competition under the Lanham Act of 1946, 15 U.S.C. § 1051 et seq., and under state law. Jurisdiction was based on 15 U.S.C. § 1121 and 28 U.S.C. § 1338.

In its complaint, plaintiff alleged its ownership of the registered trademark "VERA" on scarves, women's sportswear, and a large variety of linens. Plaintiff claimed that the defendant had infringed its trademark by using the mark "VERA" on cosmetics and toiletries manufactured in Spain by Vera, S.A. and distributed in the United States by the defendant. Plaintiff sought injunctive relief, damages and an accounting. Vera, S.A. was not named as a defendant and has not sought to intervene in this action.

The evidence adduced during the two day trial in October 1974 presented no substantial dispute as to the historical facts. In 1945 Mrs. Vera Neumann, her husband and a partner formed Scarves by Vera, a partnership which was plaintiff's predecessor. Plaintiff soon gained wide success as one of the first designers of high-fashion signature scarves. From the outset, plaintiff made scarves, women's blouses and some linen goods. Subsequently, plaintiff expanded

* United States District Judge for the District of Connecticut, sitting by designation.

into a wide variety of women's sportswear, including dresses, belts and sweaters, and a line of designer home accessory items, such as sheets, towels, table linens and place settings. The fabrics or facings of all these goods contained colorful patterns created by Mrs. Neumann, who is a well known artist.

Plaintiff's goods were sold under the trademark "VERA." Plaintiff is the owner of two registrations for the mark "VERA" in the United States Patent and Trademark Office. The first, covering scarves, neckties, blouses, shawls and kerchiefs, was filed on August 12, 1958 and issued on August 11, 1959. The second, covering the same items, plus a broad range of women's sportswear, apartment accessories and linens, was filed on September 2, 1969 and issued on August 11, 1970.[1]

Plaintiff sells its goods in some 8,000 medium- to high-fashion department stores, boutiques and specialty shops across the nation. A representative sample of plaintiff's principal retail outlets includes Bergdorf Goodman, Bonwit Teller, Saks Fifth Avenue, Bloomingdale's, Macy's and Gimbels.

Plaintiff introduced extensive evidence of its considerable success and wide recognition in the fashion-conscious consumer market. Plaintiff's sales rose from $10.5 million in 1966 to over $21 million in 1972, before falling to $18 million in 1973 due to the general economic downturn.

Plaintiff has spent more than $3 million since 1966 in advertising and promoting its products under- the "VERA" trademark. Since 1970 plaintiff has spent 300 to 500 thousand dollars annually. In addition, the plaintiff's licensees and retailers have also contributed to the advertising pool pursuant to cooperative advertising arrangements.

The plaintiff also produced examples of its advertisements and an impressive volume of articles which had appeared in publications including the New York Times, The New Yorker, Vogue, Town & Country, Harper's Bazaar, and Mademoiselle. These articles, written by independent journalists about plaintiff's growth and products and discussing plaintiff along with such names as Blass, Cardin, Pucci, and St. Laurent, were evidence that plaintiff was recognized as a leader in the fashion industry. The plaintiff also called three experts on the fashion industry who testified that plaintiff was recognized among the top "name" designers, although plaintiff's apparel was slightly lower fashion than that of the other designers mentioned above.

Defendant is the exclusive distributor in New York State of products manufactured by Vera, S.A. in Spain pursuant to a written agreement dated June 1, 1970. Vera, S.A. was founded in the 1930s by its present owner, Abelardo Vera Martinez. Vera, S.A. obtained International Registration No. 134,216 in 1948 for the mark "VERA" for toiletries and cosmetics, and renewed that registration in 1968. However, the only registration which Vera, S.A. has in the United States is for the trademark "SIGLO DE ORO." Vera, S.A.'s United States trademark for "SIGLO DE ORO" was registered in 1967; the name "Vera (Espana)" appears on that registration in small type in the corner of the certificate to identify the manufacturer, rather than as part of the trademark. On May 6, 1971, Vera, S.A. filed a United States application for registration of the mark "VERA" for toiletries and cosmetics, including nail lacquer, lipstick, face powder, cologne, perfume, after-

---

1. Specifically, plaintiff's 1970 registration covers:

   Articles of wearing apparel for women, young women and girls—namely, scarves, neckties, blouses, shawls, and kerchiefs adapted to be worn as head coverings and as neckerchiefs; barbecue sets including aprons and gloves, coveralls in the nature of smocks; outer dress and sport shirts, outer shorts and trousers of assorted lengths, dress pajamas, waistcoats, shifts, dresses, playsuits, skirts, tunics, tops, jumpsuits, sashes, mufflers, ponchos, hats, caps, and hoods—in Class 39. and

   Table linens, i. e., tablecloths, napkins, hand towels, kitchen aprons, dish towels, guest towels, potholders, place mats, and bath towels, in Class 42.

shave lotion, deodorants and soap. On May 29, 1973, Vera, S.A.'s application was published for opposition. Plaintiff filed an opposition, and proceedings have since been suspended pending termination of this action.

Vera, S.A. began exporting small amounts of perfumes and cosmetics from Spain into the United States in 1962. Soaps and other toiletries were later included. From 1962 to 1964 these items were handled by local distributors, and from 1964 to 1970 by Sara Feldschtein (now doing business as Vera Cosmetics, Ltd.).

Defendant introduced no evidence that Vera, S.A. ever sold its goods in the United States under the mark "VERA," with the exception of a single line of men's cologne sold after 1970. In its answer, defendant pleaded as an affirmative defense that "the notation 'Vera,' except in the case of cologne for men . . . was used to indicate the manufacturer and not the product" and that its products were "identified by such trademarks as 'SIGLO DE ORO,' 'ISABEL MARIA,' '74,' 'ISABELINA,'" etc.

Although the defendant called one of Vera, S.A.'s officers from Spain to testify, defendant introduced no evidence regarding any labels used on its products before 1970 and no proof that the name "VERA" appeared prominently on those products, which were all sold under other trademarks. The only documentary evidence introduced by defendant—invoices, shipping records, and customs documents—indicated that "Vera" was used merely to identify the manufacturer, and was not used as a significant part of the marks under which Vera, S.A.'s items were sold. After mid or late 1970, defendant began to display the name "VERA" more prominently on its items, although all of these goods except for men's cologne were still sold under other trademarks.

Prior to 1971, Vera, S.A.'s sales in the United States were negligible. Its goods were sold primarily through Spanish language newspapers. Vera, S.A.'s records showed only seven sales to five customers between 1962 and 1964 amounting to $3,823.79. Between 1965 and 1970, Vera, S.A.'s sales in this country totalled no more than $25,000, ranging from $5,872.02 in 1965, to $1,211.98 in 1968 and $8,573.70 in 1970.

After 1970, when Vera, S.A. began distributing its products through defendant and began using the name "VERA" more prominently on its packaging, sales increased dramatically. Defendant's sales of Vera, S.A.'s products reached $100,000 annually by 1974. Defendant has greatly expanded the geographical market in which these items are sold. Defendant's products are now sold in New York through such stores as Gimbels and Bloomingdale's—the very stores in which plaintiff's lines are sold—and advertised in prominent publications such as The New Yorker, The Daily News and The New York Post.

Plaintiff proved that most of the top designers also marketed their own lines of perfumes, cosmetics and toiletries, including such designers as Bill Blass, Cardin, Christian Dior, Lanvin, Norell, Patou, Pucci, Gucci, Hattie Carnegie, Chanel, Yves S. Laurent and Faberge.

In 1969 plaintiff considered selling its own line of cosmetics and fragrances. Columbia Broadcasting Systems first approached plaintiff to propose a joint venture, but plaintiff was advised to go into the field with a firm that had had experience. Plaintiff then approached Max Factor, but Max Factor had just come out with a new line of its own cosmetics and perfumes and was unwilling to make further investment at the time, even though it thought favorably of plaintiff's idea. Finally, plaintiff approached Estee Lauder, which did not want to put another line of cosmetics under a woman's name on the market. Plaintiff took no further steps on the proposal.

Plaintiff noticed one of defendant's advertisements for sales representatives in the July 29, 1970 issue of Women's Wear Daily. The advertisement mentioned that defendant planned to introduce a line of toiletries from "VERA/BARCELONA SPAIN." By letter dated August 3, 1970, plaintiff

warned defendant that it would bring suit if defendant began marketing its products under the name "VERA." Defendant did not respond, but instead began marketing its toiletries with prominent use of the name "VERA." On June 10, 1971 plaintiff again protested, and, after its second protest was ignored, commenced this action on July 7, 1971.

Judge Carter, in his opinion dated July 9, 1975, held that plaintiff was not entitled to injunctive relief against defendant's use of the name "VERA." He found the difference between plaintiff's mark "VERA" in script and defendant's use in block letters insignificant. Despite plaintiff's success in the market, its large expenditures on advertising and the other evidence of plaintiff's wide recognition, the district court found plaintiff's mark to be weak because it was a common name and because a number of third parties had registrations which included the same name. The court noted that although plaintiff might argue that its mark has acquired secondary meaning with respect to scarves, the contention was "dubious" and, even if conceded, would "not establish plaintiff's right to bar use of the mark in other fields since there is . . . no right to a mark in gross." The court found no evidence that defendant intended to palm its products off as plaintiff's. The court also noted that although plaintiff "may not be barred by laches," the fact that Vera, S.A. had been importing its products into the United States since 1962 "with the mark Vera on them . . . does help underscore the fact that both parties have been operating in their respective fields for a long time without knowledge of each other . . . which further erodes any argument to the likelihood of confusion." The district court rejected plaintiff's claim that it was likely to enter the cosmetics and fragrance field "as other couturiers have done," and reasoned that the public would probably not identify defendant's products with plaintiff in view of the fact that plaintiff was not like the well-known and well-established figures in high fashion who use their names on cosmetics and fragrances.

The essential question here is whether plaintiff is entitled to protection of its trademark "VERA" against defendant's use of the name on cosmetics, perfumes and toiletries. We answer this question in the affirmative.

■ The trademark laws protect three interests which are present here: first, the senior user's interest in being able to enter a related field at some future time; second, his interest in protecting the good reputation associated with his mark from the possibility of being tarnished by inferior merchandise of the junior user; and third, the public's interest in not being misled by confusingly similar marks—a factor which may weigh in the senior user's favor where the defendant has not developed the mark himself.

We have heretofore protected the trademark owner's rights against use on related, non-competing products—a result in accord with the realities of mass media salesmanship and the purchasing behavior of consumers. See, e. g., *Yale Electric Corp. v. Robertson*, 26 F.2d 972 (2 Cir.1928) (flashlights v. locks); *L. E. Waterman Co. v. Gordon*, 72 F.2d 272 (2 Cir.1934) (mechanical pens and pencils v. razor blades); *S. C. Johnson & Son, Inc. v. Johnson*, 116 F.2d 427 (2 Cir.1940) (waxes and floor cleaners v. fabric cleaners); *Triangle Publications, Inc. v. Rohrlich*, 167 F.2d 969 (2 Cir.1948) (magazines v. girdles); *Pure Foods, Inc. v. Minute Maid Corp.*, 214 F.2d 792 (5 Cir.1954) (juices v. meats); *Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495 (2 Cir.1962) (groceries v. real estate); Communications Satellite Corp. v. Comcet, Inc., *429 F.2d 1245 (4 Cir.1970) (*communications services v. computers); *Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp.*, 350 F.Supp. 1341 (E.D.Pa.1972), aff'd, 480 F.2d 917 (3 Cir.1973) (pipes and tobacco v. scotch whiskey). Even when we have rejected infringement claims with respect to non-competing goods, we have carefully limited our holdings. See, e. g., *King Research, Inc. v. Shulton, Inc.*, 454 F.2d 66, 68–69 (2 Cir.1972).

■ Absent equities in the junior user's favor, he should be enjoined from using a similar trademark whenever the non-competitive products are sufficiently related that customers are likely to confuse the source of origin. 15 U.S.C. § 1114(1) (1970); *Safeway Stores, Inc. v. Safeway Properties, Inc., supra,* 307 F.2d at 499; *Yale Electric Corp. v. Robertson, supra,* 26 F.2d at 974.

We turn now to the grounds for the district court's holding that defendant's use of the mark "VERA" did not infringe plaintiff's trademark.

■ As the district court pointed out, a trademark owner's right to relief where the products are non-competitive depends upon a number of variables including the strength of his mark; the degree of similarity between the two marks; the proximity of the products; the likelihood that the prior owner will bridge the gap; actual confusion; the defendant's good faith in adopting his mark; the quality of defendant's product and the sophistication of the buyers. *Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.,* 411 F.2d 1097, 1099 (2d Cir.1969), cert. denied, 396 U.S. 1054, 90 S.Ct. 707, 24 L.Ed.2d 698 (1970); *Triumph Hosiery Mills, Inc. v. Triumph International Corp.,* 308 F.2d 196, 198 (2 Cir.1962); *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2 Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

Plaintiff claims that the district court improperly concluded that "VERA" was a weak mark merely because it was a common name and because of third party registrations; that the district court erred in finding that Vera, S.A. had been importing its products into the United States under the "VERA" mark since 1962; that the district court erroneously concluded that plaintiff's and defendant's products were so unrelated that consumers were not likely to be misled; and that the district court erred in concluding that there was no reasonable probability that plaintiff would enter the cosmetics, fragrances and toiletries market. We agree with all of these claims except the last, as to which we need express no opinion.

■ Plaintiff's "VERA" trademark clearly is a strong mark. Plaintiff's sales figures, its advertising expenditures and the many articles written about plaintiff clearly established that plaintiff's "VERA" trademark was highly successful and widely recognized in the medium-high fashion market. Our conclusion that "VERA" is a strong mark is not affected by the fact that Vera is a common name. We need not decide whether such a name might provide a weaker mark in other circumstances, since we think plaintiff has clearly established secondary meaning entitling it to broad protection of the "VERA" mark. *Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp., supra,* 350 F.Supp. at 1358–60. Moreover, even when the mark in question is the name of the junior user, his right to use the name on his products may be limited, and he may be compelled to add some distinguishing words to reduce the possibility of confusion. *S. C. Johnson & Son, Inc. v. Johnson, supra,* 116 F.2d at 428–29.

In holding that plaintiff's trademark was weakened by third-party registrations, the district court relied upon the following registered marks: "Vera" for foods; "Vera Smart" for women's full fashion hosiery; "Vera Stewart" for cosmetics; "Vera Sharp" for cheeses; "Medicamentie Vera" for a medical publication; "Vera Cruz" for textile products; and "Vera Horn" for women's apparel. We think the district court erred in giving such weight to these registrations.

The significance of third-party trademarks depends wholly upon their usage. Defendant introduced no evidence that these trademarks were actually used by third parties, that they were well promoted or that they were recognized by consumers. As the Court pointed out in *Lilly Pulitzer, Inc. v. Lilli Ann Corp.,* 376 F.2d 324, 325, 54 C.C.P.A. 1295 (1967), "the existence of these registrations is not evidence of what happens in the market place or that customers are familiar with their use." Compare *Triumph Hosiery Mills, Inc. v. Triumph International Corp., supra,* 308 F.2d at 199 n.2

(207 registrations under same name). Moreover, all but one of the third-party registrations cited by the district court contained combinations of words, rather than the word "Vera" alone, and several were registered for entirely unrelated products, such as foods or a medical publication. *W. E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 661 (2 Cir.1970). The record does not contain any evidence to support the claim that plaintiff's trademark was weakened by uses of similar marks by third parties.

■ Likewise, we think the district court erred in attaching any significance to the fact that Vera, S.A. has been importing toiletries into the United States since 1962. There is no evidence in the record to support the district court's finding that Vera, S.A. had imported its products continuously since 1962 "under the mark Vera" or that "VERA" was part of Vera, S.A.'s trademark registered in the United States. Vera, S.A.'s only trademark registered in the United States is for "SIGLO DE ORO." On that registration the phrase "Vera (Espana)," rather than the name "Vera" alone, appears in small type, in the corner of the certificate merely to identify the manufacturer, not as part of the trademark.

Moreover, the significance of Vera, S.A.'s imports since 1962 depends upon its usage of the name "VERA." Defendant introduced no evidence that Vera, S.A. had ever sold its goods under the "VERA" trademark, with the exception of a single line of men's cologne sold after 1970. In its answer, defendant pleaded that the word Vera was merely used to identify the manufacturer and "not the product", and that its products were identified by other trademarks. Defendant introduced no copies of labels used on Vera, S.A.'s products prior to 1970, and no evidence that "Vera" was a prominent part of the name under which those products were sold before that date. Moreover, prior to 1970, Vera, S.A.'s sales in the United States were negligible, and it was not until 1970 or so that defendant began selling its products in some of the same stores in which plaintiff sold its goods.

On this record, we think the district court erred in concluding that Vera, S.A.'s sales in this country since 1962 negate any inference of confusion between plaintiff's and defendant's products. Moreover, the defendant has not introduced any evidence of longstanding sales under a similar mark that would in any way affect the equities of this case.

Finally, the district court found that the plaintiff was not likely to enter the cosmetics, perfume or toiletries market and that that market was unrelated to the apparel market in which plaintiff sold its goods. We have no need to decide whether there is a substantial likelihood that plaintiff will enter the cosmetics and fragrances market, although we cannot agree with defendant that this likelihood is small simply because the firms which plaintiff approached in 1969 were themselves unwilling to go through with the joint venture at that time.

Rather, we hold that defendant's products were by their nature so closely related to plaintiff's own products that plaintiff was entitled to protection against defendant's use of the mark "VERA" on its products. As Judge Learned Hand wrote in his frequently quoted opinion in *Yale Electric Corp. v. Robertson, supra,* 26 F.2d at 974, "it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful."

■ We think the record clearly establishes that defendant's use of the name "VERA" on its products is likely to confuse customers. Plaintiff proved that many, if not most, of the leading designers sell perfumes and cosmetics under their own trademarks. The many newspaper articles which plaintiff introduced, as well as the testimony of plaintiff's expert witnesses, clearly established that plaintiff's recognition is equivalent to that of designers who had expended into the cosmetics and fragrances fields. Like these other designers, plaintiff appeals to the name-conscious customer. Although plaintiff is not a couturier and sells medium fashion apparel, plaintiff's reputation as a "name" designer would, in

all likelihood, lead many customers to think that cosmetics and fragrances sold under the "VERA" trademark were manufactured by plaintiff. Plaintiff's trademark is strong in the market in which it sells its goods. Moreover, defendant has recently expanded its marketing of cosmetics and fragrances, and is now selling those products in the very same stores in which plaintiff's lines are sold.

A trademark owner need not prove that a junior user's conduct will mislead all customers, but only that it is likely to mislead many customers. Moreover, as we have held on numerous occasions, "a showing of actual confusion is not necessary and in fact is very difficult to demonstrate" with reliable proof. *W. E. Bassett Co. v. Revlon, Inc., supra,* 435 F.2d at 662; *Maternally Yours, Inc. v. Your Maternity Shop,* 234 F.2d 538, 542 (2 Cir.1956); *Miles Shoes, Inc. v. R. H. Macy & Co.,* 199 F.2d 602, 603 (2 Cir.1952).

We think that plaintiff, who has expended large sums in promoting its "VERA" trademark, and who has gained wide recognition in the market through its efforts is entitled to relief which will protect its good name against misassociation with defendant's products.

We direct the district court to enter appropriate injunctive relief protecting the plaintiff against any prominent display of the work "VERA" on defendant's cosmetics, toiletries and fragrances. Since Vera is also the name of Vera, S.A.'s founder, defendant should be allowed to use that name in small type, but only in conjunction with other words which prevent any likelihood of confusion (e. g., "Vera y Cosmetica, S.A.").

An award of damages and an accounting "is not an automatic concomitant of the grant of injunctive relief," *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons,* 523 F.2d 1331, 1344 (2 Cir.1975), and we do not think the plaintiff is entitled to such an award here. Although plaintiff promptly objected to defendant's first prominent use of the name "VERA", defendant's goods were non-competitive with plaintiffs, and so defendant's

profits could not have come from diverting plaintiff's customers. Moreover, the district court's finding that defendant acted in good faith is not clearly erroneous, since Vera is also the surname of Vera, S.A.'s founder, since defendant might have believed that defendant's products were not sufficiently related to plaintiffs to infringe plaintiff's mark, and since Vera, S.A. sells its products in many countries other than the United States, thus reducing the likelihood that it adopted the "Vera" display solely to profit from plaintiff's good reputation. *W. E. Bassett Co. v. Revlon, Inc., supra,* 435 F.2d at 664.

Reversed and remanded with instructions to grant relief in accordance with this opinion.