**ROSENTHAL A.G., Plaintiff,**

v.

**RITELITE, LTD., Defendant.**

95–CV–0765 (CBA).

United States District Court,
E.D. New York.

Sept. 5, 1997.

Charles LaPolla (argued), Robert C. Faber, Gregory A. Rutchik, Ostrolenk, Faber, Gerb & Soffen, New York, NY, for plaintiff.

Howard Schneider, New York, NY, for defendant.

### MEMORANDUM & ORDER

AMON, District Judge.

### INTRODUCTION

On November 14, 1996, this Court heard oral argument on plaintiff's motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Plaintiff brings this action for trademark infringement, false designation of origin, and false representations in violation of the Lanham Act, 15 U.S.C. §§ 32 and 43(a); as well as for common law unfair competition and injury to business reputation under the New York Anti–Dilution Statute.

Plaintiff seeks summary judgment on all of its claims. Plaintiff seeks a limited permanent injunction, preventing defendant from using the name "Rosenthal Judaica Collection" unless it is preceded by the first name "Alex" or "Jacob" in a type of the same size, style, and prominence. Plaintiff also demands an accounting and an award of profits obtained by defendant as a result of the acts complained of, as well as an award of damages sustained by plaintiff as a result of defendant's activities. In addition, plaintiff seeks a trebling of the award of profits and damages in light of the allegedly willful and intentional nature of defendant's conduct.

For the reasons set forth below, plaintiff's motion for summary judgment is granted with respect to its claim for trademark infringement under § 32 of the Lanham Act. Defendant is permanently enjoined from using the name "The Rosenthal Judaica Collection" on any of its products unless the name "Rosenthal" is preceded by the first name "Alex" or "Jacob" presented in a type of the same size, style, and prominence as that used

to present "Rosenthal." Plaintiff is to advise the Court within ten days of the date of this Order as to whether it wishes to proceed with its claim under § 43(a) of the Lanham Act and its state law claims.

## BACKGROUND

### Plaintiff Rosenthal A.G.

Plaintiff Rosenthal A.G. ("Rosenthal") is a German corporation, founded in 1879, with a wholly-owned American subsidiary, Rosenthal U.S.A. Ltd. Plaintiff describes itself as a "manufacturer and marketer of china, glassware, tableware, giftware, home furnishings, and other related goods." Pl.'s Statement of Undisputed Facts at ¶ 2. Plaintiff distributes a variety of products under the Rosenthal name, including porcelain dinnerware and giftware, earthenware and fine stoneware, crystal and glass, flatware, furniture, and furnishings. Plaintiff holds registrations in the United States for its trademark "Rosenthal" and a stylized version of the name "Rosenthal." Rosenthal has used this trademark and tradename in the U.S. since 1907. See Pl.'s Statement of Undisputed Facts at ¶ 3.

Plaintiff has expended significant sums to advertise and promote the Rosenthal trademark and tradename both in the U.S. and internationally.[1] In the U.S., Rosenthal promotes its name and mark in a variety of brochures and catalogs, as well as in magazines and newspapers. For example, advertisements have appeared in *The New York Times, Modern Bride, Food & Wine,* and *Metropolitan Home. See id.* at ¶ 9. Plaintiff's products are distributed through a wide variety of stores, including department stores such as Bloomingdale's and Neiman Marcus, as well as specialty retailers and museum gift shops. *See id.* at ¶ 10.

Plaintiff asserts that products marketed under its trademark and tradename frequently have been used by purchasers in connection with social, cultural, and family events, as well as religious ceremonies such as Christmas or Hanukkah. *See id.* at ¶ 12. Plaintiff claims that many of the purchasers of Rosenthal—products over the years have been persons of German and European Jewish decent; plaintiff thus claims that it has marketed items such as plates, candleholders, honey pots, and other glassware and tableware for use in connection with Jewish family, cultural, and religious ceremonies. *See id.* Plaintiff Rosenthal claims that the sales of such items under its trademark and tradename Rosenthal began long before the founding of defendant Rite Lite in 1993, or its predecessor Rite Lite Novelty in 1948, and prior to the first use, in approximately 1984, of the trademark Rosenthal Judaica Collection by either of the Rite Lite entities. *See id.*

Plaintiff Rosenthal sets forth facts regarding its production of commemorative items connected with the State of Israel. From 1972 to 1973, plaintiff marketed, under the Rosenthal name, a plate commemorating the 25th anniversary of the creation of the state of Israel. *See id.* at ¶ 13. In addition, plaintiff indicates that it plans to market products commemorating the 3000th anniversary of the city of Jerusalem. *See id.* Plaintiff also describes plans to participate in a competition for the design of Judaica items in 1996. *See id.*

In 1992, plaintiff Rosenthal made a decision to increase the production and marketing of items under the Rosenthal trademark and tradename that could be used in connection with Jewish social, cultural, and religious events. *See id.* at ¶ 14. Simultaneously, the company decided to increase sales to outlets that traditionally sell such "Judaica" items. *See id.* Thereafter, in 1995, Rosenthal began to manufacture and market a seder plate and kiddush cup under the Rosenthal mark. *See id.* Rosenthal argues that, because of its prior marketing of products to be used in connection with Jewish social, cultural, and religious events, and its involvement with

---

1. Plaintiff sets out, for the years 1990 through 1995, the expenditures of plaintiff and its subsidiaries in connection with the advertising and promotion of the Rosenthal tradename and trademark worldwide. These expenditures were approximately U.S. $ 12,000,000 per year. *See*

Pl.'s Statement of Undisputed Facts at ¶ 4. Expenditures in connection with the advertising and promotion of the Rosenthal trademark and tradename in the U.S. range from $1,260,000 in 1991 to $510,000 in 1992. *See id.* at ¶ 5.

products commemorating Jewish cultural life, the introduction of the seder plate and kiddush cup were natural continuations and expansions of the Rosenthal product line. Plaintiff says that these new products have not required a change in marketing or distribution, although they have been sold through new trade channels to shops in synagogues and temples.

### Defendant Rite Lite, Ltd.

Defendant Rite Lite, Ltd. ("Rite Lite") is a New York corporation engaged in the sale of Judaica and gift items.[2] Defendant describes its primary business as the sale of Judaica items at wholesale. *See* Decl. of Alex Rosenthal at ¶ 5. Defendant has marketed these products since 1948, and has marketed them under the Rosenthal family name as "The Rosenthal Judaica Collection" since the 1970s.[3] *See id.* at ¶ 8. A catalog of defendant's products shows menorahs, shofars, washing cups, honey dishes, draydels, jewelry with Jewish symbols, seder plates, kiddush sets, mezuzas, and many other goods. *See* Pl.'s Statement of Undisputed Facts at Ex. 2. Defendants' products are sold at department stores such as Bloomingdale's, Fortunoff, Nordstrom, Broadway Stores, and Macy's; discount stores such as Walgreens, Eckerds, Linens and Things, and Bed Bath and Beyond; and supermarkets such as Publix, Extra, Waldbaums, and Red Apple. *See* Dep. of Alex Rosenthal at 24 – 25, 28, 32 – 33.

### The Claims

Plaintiff claims that defendant's activities constitute an infringement of plaintiff's federally registered trademark in violation of § 32 of the Lanham Act, 15 U.S.C. § 1051. Plaintiff alleges that defendant's acts are likely to cause confusion, cause mistake, or deceive the public into erroneously believing that defendant's goods emanate from or are authorized, endorsed, or otherwise associated with plaintiff. In addition, plaintiff claims that defendant's actions infringe its tradename and constitute false designations of origin and false descriptions and representations of fact under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Finally, plaintiff claims that defendant is engaging in unfair competition in violation of New York common law and that defendant's activities create a likelihood of injury to plaintiff's business reputation and result in a dilution of the distinctiveness of plaintiff's trademark in violation of the laws of the states in which defendant has marketed its products, including, but not limited to, New York General Business Law § 368–d. Defendant asserts a counterclaim for tortious interference with defendant's business by attempting to prevent defendant from marketing its products under the Rosenthal name.

Plaintiff has moved for summary judgment on all of its claims and for a limited permanent injunction. In support of its motion for summary judgment on its federal trademark infringement claim, plaintiff first asserts that its registrations constitute prima facie evidence of the validity of the trademarks, plaintiff's ownership of the marks, and plaintiff's exclusive right to use the mark. Plaintiff contends that the factors outlined by the Second Circuit in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961), indicate that there is likelihood that consumers will be confused as to the source of defendant's goods and that consumers are likely to believe erroneously that plaintiff has somehow authorized or approved defendant's infringing goods. As such, plaintiff argues that it is entitled to relief on its claim for federal trademark infringement. Similarly, plaintiff also asserts that the likelihood of confusion entitles it to summary judgment on its claim for false representations and false designation of origin in violation of § 43(a) of

---

**2.** Rite Lite, Ltd., founded in 1948 by Jacob Rosenthal, was incorporated in 1992.

**3.** However, Alex Rosenthal, president of defendant, said at his deposition that he could not recall whether the name Rosenthal was being used by the company when he joined it in 1978. The first time he could recall its use was when the logo was made about 12 years ago (thus in 1984). *See* Dep. of Alex Rosenthal at 9 – 10. In

addition, defendant's answer to plaintiff's complaint asserts that defendant began to market products using the Rosenthal name in 1986. *See* Answer at ¶ 35. For the purposes of summary judgment, the Court will construe the evidence in the light most favorable to the defendant and assume that defendant has marketed products under the family name since the 1970s.

the Lanham Act, as well as for its claim for unfair competition under New York common law. Finally, plaintiff asserts, citing *Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 624–25 (2d Cir.1983), that liability for dilution is appropriate because plaintiff's mark has acquired a strong reputation in defendant's field, the marks are substantially similar, and plaintiff has displayed predatory intent.

In response, defendant asserts that, although plaintiff has undoubtedly developed a product identification with its dinnerware products that is entitled to protection, the creation of a protectable trademark in that area does not empower plaintiff to extend those rights to unrelated goods where the trademark has yet to achieve protectable status. Defendant contends that plaintiff's entrance into the Judaica market is not a natural product extension or continuation of its efforts in the dinnerware or flatware markets. Defendant also argues that, as a descriptive mark, plaintiff's trademark in the name Rosenthal is entitled to protection only if plaintiff can establish secondary meaning in its mark in the Judaica market. Defendant concedes that plaintiff has acquired a secondary meaning for its trademark in certain markets but argues that, according to the factors outlined in *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 212–13 (2d Cir.1985), plaintiff has not done so in the Judaica market. As such, defendant argues that there is no likelihood of confusion under the *Polaroid* standard.

Plaintiff asserts in reply, *inter alia*, that its trademark and tradename are entitled to protection in the Judaica market, if there is indeed such a separate market, because Judaica items are within plaintiff's zone of natural expansion. Plaintiff argues that, as the first user of the Rosenthal mark, it is entitled to protection in a non-competitive but related market to which it might reasonably be expected to expand in the future. Plaintiff points to its gradual expansion into the Judaica market as evidence of a reasonable expectation of future expansion into the related Judaica market. Plaintiff contends that it need not show secondary meaning in the related market for Judaica products in order to warrant protection, for such a re-

quirement would eviscerate the expansion doctrine.

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Eastman Machine Co. v. United States*, 841 F.2d 469, 473 (2d Cir.1988). No genuine issue exists:

> unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir.1996). The moving party therefore:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997). In addition, summary judgment is appropriate against a non-movant who, after adequate time for discovery, fails to establish the existence of an element that is essential to her case and on which she will bear the burden of proof at trial. *See Celo-*

*tex*, 477 U.S. at 322, 106 S.Ct. at 2552; *United States v. Pilot Petroleum Assocs., Inc.*, 712 F.Supp. 1077, 1081 (E.D.N.Y.1989).

In the instant case, there are no genuine issues of material fact that would preclude summary judgment. Although some facts set forth by plaintiff and defendant are disputed, none of those disputed facts are material. Hence, summary judgment is appropriate. *See Anderson*, 477 U.S. 247–48, 106 S.Ct. at 2509–10 ("As to materiality ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Aviall, Inc. v. Ryder System, Inc.*, 110 F.3d 892, 897 (2d Cir.1997).

Plaintiff seeks summary judgment on its claims of trademark infringement under 15 U.S.C. § 1114(1), Lanham Act § 32(1), and false designation of origin under 15 U.S.C. § 1125(a), Lanham Act § 43(a). Both of these claims require proof of essentially the same elements. *See Bi–Rite Enters., Inc. v. Button Master*, 555 F.Supp. 1188, 1192 (S.D.N.Y.1983). Under § 32(1) of the Lanham Act, "a plaintiff in a trademark infringement action must show that the defendant (1) without consent, (2) used in commerce, (3) a reproduction, copy or colorable imitation of plaintiff's registered mark, as part of the sale or distribution of goods or services, and (4) that such use is likely to cause confusion." *Gruner + Jahr U.S.A. Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir.1993). Under § 43(a) of the Lanham Act, a plaintiff has a private cause of action against any party who:

> in connection with any goods ... or container for goods uses in commerce any word, term, name, symbol, or device or any combination thereof ... which ... is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods ... by another person.

15 U.S.C. § 1125(a) (1994).

In this case, there is no dispute that defendant used the Rosenthal name without the consent of plaintiff Rosenthal A.G. or its subsidiary Rosenthal U.S.A. It is also undisputed that the mark has been used commercially. Plaintiff must establish, therefore, that its Rosenthal trademark is entitled to protection and that defendant's use of that mark is likely to cause confusion.

## A. Protectability of the Trademark in General

The threshold question is whether plaintiff's trademark is entitled to protection under the Lanham Act. *See Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 212–13 (2d Cir.1985). A mark's protection depends on its classification, in ascending order of protection, as generic, descriptive, suggestive, arbitrary, or fanciful; arbitrary or fanciful marks are the most eligible for trademark protection, generic marks are the least. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992) (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976)).

Rosenthal is a surname, or family name. The Second Circuit has consistently held that such names are descriptive marks. *See Pirone v. MacMillan, Inc.*, 894 F.2d 579, 583 (2d Cir.1990); *815 Tonawanda Street Corp. v. Fay's Drug Co.*, 842 F.2d 643, 648 (2d Cir.1988); *Yarmuth–Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 993 (2d Cir.1987); *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 104 (2d Cir.1985). Because descriptive marks are merely descriptive of a product, and do not inherently identify the product's source, they are not automatically protected under the Lanham Act. *See Two Pesos*, 505 U.S. at 769, 112 S.Ct. at 2757–58. Rather, descriptive marks are protected under the Lanham Act only if they acquire a distinctiveness commonly referred to as "secondary meaning." *See id.; Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 390 (2d Cir. 1995) (citing *Merriam–Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 70 (2d Cir. 1994)). Descriptive marks acquire secondary meaning when, through use, they become "uniquely associated with a single source" and "the public is moved in any degree to buy an article because of its source." *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, (2d Cir.1997); *see also Abraham Zion Corp.*, 761 F.2d at 104 (stating that descriptive marks acquire secondary mean-

ing when "the name and the business have become synonymous in the mind of the public, submerging the primary meaning of the term in favor of its meaning as a word identifying that business").

■ Plaintiff argues that it need not here establish secondary meaning for its Rosenthal trademark because the mark is already registered and hence, secondary meaning has already been proved. Plaintiff asserts that its federal registration constitutes *prima facie* evidence of the validity of the Rosenthal mark, of plaintiff's ownership of the mark, and of its exclusive right to use the mark in connection with the goods set forth in the registrations. Plaintiff is correct in that "[w]ords which are 'primarily merely a surname' may not be registered without proof of secondary meaning." *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 583 (2d Cir.1990) (citing 15 U.S.C. §§ 1502(e), 1502(f) (1988)). Moreover, once a registered trademark is in consecutive use for five years subsequent to its registration, defendants in an infringement suit "may not succeed in a defense that declares the mark is entitled to no protection because it is descriptive." *Gruner + Jahr U.S.A. Publ'g*, 991 F.2d at 1077 (citing *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194–202, 105 S.Ct. 658, 661–66, 83 L.Ed.2d 582 (1985)). Defendant counters, however, that the act of registering the name does not automatically entitle the plaintiff to trademark protection; rather, "the act of registering a proper noun as a trademark 'does not withdraw it from the language, nor reduce it to the exclusive possession of the registrant.'" *Pirone*, 894 F.2d at 583 (quoting *Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dept. Stores, Inc.*, 299 F.2d 33, 36 (2d Cir. 1962)).

This Court need not resolve the issue of how much protection should be afforded to a proper noun registered as a descriptive mark. Nor does this Court need to determine whether plaintiff's mark has acquired secondary meaning. Rather, defendant concedes that plaintiff has established secondary meaning in its tradename and trademark Rosenthal:

There is no point of contention that Rosenthal has developed a product identification with its dinnerware products and it is not Rite Lite's contention that the Rosenthal A.G. dinnerware products have not achieved certain status which deserves protection against those who wish to usurp their trade mark and goodwill.

Def. Mem. of Law at 7. In addition, at oral argument before this Court on November 14, 1996, when asked whether defendant contested the fact that plaintiff had established secondary meaning in its name at least with respect to china and glassware, counsel for defendant responded that defendant did not. *See* Trans. of Oral Argument at 2. Thus, as there is no material issue of fact as to whether plaintiff has established secondary meaning in the trademark Rosenthal in what might be described as the china, dinnerware, glassware, and flatware market, plaintiff's mark, though descriptive, is entitled to the protections of the Lanham Act.

### B. Protectability of the Trademark in the Expanded Product Line

■ The question remains, however, whether plaintiff's mark deserves protection in what may be described as the Judaica market. Although plaintiff disputes defendant's contention that Judaica products constitute a separate market, plaintiff argues that if it is a separate market, it is within plaintiff's zone of natural expansion. Plaintiff thus argues that it is entitled to protection against defendant's uses of the name "The Rosenthal Judaica Collection" because Judaica products would constitute a natural extension or continuation of plaintiff's product lines.

■ It is well established that one of the interests protected by the Lanham Act is a "senior user's interest in being able to enter a related field at some future time." *Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1172 (2d Cir.1976); *see also Horn's Inc. v. Sanofi Beaute, Inc.*, 963 F.Supp. 318, 325 (S.D.N.Y.1997). The Second Circuit has in many instances protected trademark owners' rights when their marks are used by others on related, but not directly competing, products. *See e.g., Mobil Oil Corp. v. Pegasus*

*Petroleum Corp.*, 818 F.2d 254, 258–59 (2d Cir.1987); *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 78–79 (2d Cir.1981); *Scarves by Vera*, 544 F.2d at 1172 (citing several earlier cases). These cases recognize that consumers do not always know all of the types of products manufactured by a particular company and can reasonably be expected to be confused about source or sponsorship when a mark from one product area appears in a related product area. As such, absent equities in a defendant's favor, courts should enjoin defendants "from using a similar trademark whenever the non-competitive products are sufficiently related that customers are likely to confuse the source of origin." *Scarves by Vera*, 544 F.2d at 1173.

The Court concludes based upon the undisputed evidence and basic common sense that the Judaica market is sufficiently related to the china, dinnerware, glassware, and flatware market so as to render plaintiff's production of seder plates and kiddush cups a natural expansion or continuation of its existing product line. Judaica items are a type or subset of china, dinnerware, glassware, and flatware. The affidavit of Juanita B. Light, submitted by plaintiff, states that consumers can purchase these items in the china sections of most major department stores. Light herself purchased a seder plate sold under the name Lenox at Bloomingdale's department store in New York City. *See* Aff. of Juanita Light at ¶ 2, 3. The Lenox seder plate was displayed in the china section of Bloomingdale's, where "non-'judicia' [sic] oriented chinaware, flatware and tableware items are located." *Id.* Defendant did not submit any evidence to the contrary and does not dispute the contents of Light's affidavit.

Moreover, plaintiff has already entered the Judaica market. Plaintiff introduced its seder plate and kiddush cup, using the Rosenthal trademark, in 1995. *See* Decl. of Patrick Lauer at ¶ 10, Ex. 6. Thus, the interest at stake in this case is more than plaintiff's interest in being able to enter a related market at some future time; plaintiff has already begun to manufacture and market products in the Judaica market. Accordingly, this Court finds that the Lanham Act protects plaintiff's interest in entering the Judaica market—a field related to the china, dinnerware, glassware, and flatware market.

### C. Likelihood of Confusion: The Polaroid Factors

To prove infringement of a protected trademark, a plaintiff must demonstrate that a defendant's mark creates a likelihood of confusion as to the source or origin of the goods. *See* 15 U.S.C. §§ 1114(a), 1125(a) (1994); *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 570 (2d Cir.1993); *Gruner + Jahr U.S.A. Publ'g*, 991 F.2d at 1077. Various forms of confusion are recognized as actionable under the Lanham Act. One type of confusion is product confusion—consumers purchasing a defendant's products may believe that they are purchasing a plaintiff's products. *See Arrow Fastener Co.*, 59 F.3d at 390–91; *W.W.W. Pharm. Co.*, 984 F.2d at 567. Another type of confusion is sponsorship confusion—consumers may believe that a plaintiff sponsored, licensed, or otherwise approved a defendant's products. *See Playboy Enters., Inc. v. Chuckleberry Publ'g. Inc.*, 486 F.Supp. 414, 419 (S.D.N.Y.1980), *aff'd*, 687 F.2d 563 (2d Cir.1982).

In *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.1961), the Second Circuit set forth a list of eight nonexclusive factors that courts should consider in assessing the likelihood of confusion between two marks: (1) the strength of the plaintiff's mark, (2) the degree of similarity between the two marks, (3) the proximity of the products, (4) the likelihood that the plaintiff will "bridge the gap" between the two products, (5) actual confusion, (6) the defendant's good faith in adopting its own mark, (7) the quality of the defendant's product, and (8) the sophistication of the buyers of plaintiff's and defendant's products. *See id.* at 495. "No single *Polaroid* factor is determinative. Rather each must be considered in the context of all of the other factors, and from a balance of these determinations, one is able to reach the ultimate conclusion, whether there is a likelihood of confusion between the two parties' products." *Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1004 (2d Cir.1983) (citations omitted). Moreover, the list is not exhaustive. *See Estee*

*Lauder, Inc. v. The Gap, Inc.,* 108 F.3d 1503, 1510 (2d Cir.1997); *Merriam–Webster, Inc.,* 35 F.3d at 70. Courts may consider equitable factors, such as the harm to the defendant as compared to the benefit to the plaintiff should the requested relief be granted. *See Brown v. Quiniou,* 744 F.Supp. 463, 468 (S.D.N.Y.1990) (citing *Thompson Med. Co.,* 753 F.2d at 214). However, "it is incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why." *Arrow Fastener Co.,* 59 F.3d at 400 (citing *Thompson Med. Co.,* 753 F.2d at 214).

This Court therefore will review each *Polaroid* factor in turn. "Summary judgment is appropriate where 'the undisputed evidence would lead only to one conclusion' under the *Polaroid* test." *The Sports Auth., Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 960 (2d Cir.1996) (quoting *Cadbury Beverages, Inc. v. Cott Corp.,* 73 F.3d 474, 478 (2d Cir.1996)).

### 1. Strength of Plaintiff's Mark

■ The "strength" of the mark refers to the distinctiveness of the mark and "its tendency to identify the goods sold under the mark as emanating from a particular ... source." *McGregor–Doniger, Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979). Strength is assessed by reference to two factors: (1) the degree to which the mark is inherently distinctive, and (2) the degree to which the mark has acquired distinctiveness in the commercial context. *See Fun–Damental Too, Ltd. v. Gemmy,* 111 F.3d 993, 1003 (2d Cir.1997); *W.W.W. Pharm. Co.,* 984 F.2d at 572. A court's assessment of the strength of a mark often parallels its inquiry concerning the mark's protectability under the Lanham Act. *See Arrow Fastener Co.,* 59 F.3d at 391.

■ As discussed above, plaintiff's mark, as a surname, is descriptive. Therefore, it is not inherently distinctive. However, because it is registered, it is entitled to a presumption of strength. *See Horn's Inc.,* 963 F.Supp. at 322. Moreover, the parties agree that the mark has acquired commercial distinctiveness. Defendant has conceded that plaintiff has established secondary meaning in its

trademark. In addition, plaintiff has submitted undisputed evidence that since 1907 it has engaged in the advertising and promotion of china, glassware, and various other products under the trademark Rosenthal and that it has expended significant sums of money doing so. Accordingly, the Court finds that plaintiff has established that the Rosenthal mark is a relatively strong mark. This factor therefore weighs in favor of plaintiff.

### 2. Similarity of the Trademarks

■ In assessing the similarity between two marks, "courts look to the overall impression created by the logos ... and consider the totality of factors that could cause confusion among prospective purchasers." *Gruner + Jahr U.S.A. Publ'g,* 991 F.2d at 1078.

The similarity between the marks "Rosenthal" and "Rosenthal Judaica Collection" is obvious. The parties agree, however, that there are some differences in plaintiffs and defendant's presentation of the Rosenthal trademark. Plaintiff presents "Rosenthal" in italicized or script lettering and divides the mark with two crossed swords and a crown, whereas defendant presents the words "The Rosenthal Judaica Collection" in all capital letters in a circle surrounding a menorah. Moreover, defendant asserts that it always uses the name "The Rosenthal Judaica Collection," whereas plaintiff uses the name "The Judaica Collection by Rosenthal."

Differences in the presentation of trademarks can reduce the impact of any initial similarity. *See, e.g., W.W.W. Pharm. Co.,* 984 F.2d at 573; *McGregor–Doniger, Inc.,* 599 F.2d at 1133. However, the fact that the marks may be distinguishable when placed side by side is not the appropriate test for similarity. *See Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.,* 559 F.Supp. 1189, 1197–98 (S.D.N.Y.1983). The more appropriate inquiry is the general impression conveyed to the public by the two marks. *See Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 77 (2d Cir.1988) (citing *C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.,* 753 F.2d 14, 18 (2d Cir.1985)); *McGregor–Doniger, Inc.,* 599 F.2d at 1134; *International*

*Data Group v. J & R Elecs.*, 798 F.Supp. 135, 139 (S.D.N.Y.1992).

The Court finds that the general impression conveyed by the two marks is the same. The differences in typeset are not so significant as to reduce the impact of similarity. The word "Rosenthal" is approximately the same size in both presentations and is given the same prominence in relation to the surrounding words. In addition, the differences in word combination also do not reduce the impact of similarity. The word "Rosenthal" is the most distinguishing word in both presentations; the other words used by the parties merely frame "Rosenthal." This factor therefore also weighs in favor of plaintiff.

### 3. Proximity of Goods

■ This factor refers to "whether the two products compete with each other." *Lang v. Retirement Living Publ'g*, 949 F.2d 576, 582 (2d Cir.1991). "Products which directly compete in the marketplace clearly warrant a finding of the highest degree of competitive proximity." *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 77 (2d Cir. 1988). In determining whether products directly compete, courts should consider whether the products serve the same purpose and whether they share similar geographic distribution, market position, and audience appeal. *See W.W.W. Pharm. Co.*, 984 F.2d at 573.

Plaintiff's and defendant's kiddush cup sets and seder plates directly compete with each other. It is undisputed that they serve exactly the same purpose in the same market and in the same general geographic areas. The products therefore are highly proximate. This factor thus weighs in favor of plaintiff.

### 4. Bridging the Gap

■ This factor turns on "whether the two companies are likely to compete in the same market." *Charles of the Ritz Group, Ltd. v. Quality King Distrib., Inc.*, 832 F.2d 1317, 1322 (2d Cir.1987). When parties are already selling similar products in the same market, there is no longer a gap to bridge.

*See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir.1995); *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 742 (2d Cir.1994).

Plaintiff entered defendant's market with the introduction of its seder plate and kiddush cup. Thus, plaintiff has already bridged the gap. This factor therefore weighs in favor of plaintiff.

### 5. Actual Confusion

■ " '[A] showing of actual confusion is not necessary [to prevail on an infringement claim] and, in fact, is very difficult to demonstrate' with reliable proof." *Scarves by Vera*, 544 F.2d at 1175 (citing *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir.1970)). To show actual confusion, a plaintiff must demonstrate that a defendant's use "could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation." *Lang*, 949 F.2d at 583.

Plaintiff claims that there have been many instances of actual confusion over the years. Plaintiff makes this assertion based in part on Rite Lite president Alex Rosenthal's statements at his deposition that people have asked him if Rite Lite was affiliated with plaintiff Rosenthal. However, Alex Rosenthal said that the questions regarding any possible relationship with plaintiff were "few and far between, usually a question geared closer to curiosity rather than the focus of whether or not that person would undertake to do business with Rite Lite or whether we had an authorized association with plaintiff." Decl. of Alex Rosenthal at ¶ 12. Plaintiff also submits the declaration of Mattie Multimore, who works for Balogh Company, a marketer of china, dinnerware, and other products, and who claims to have marketed products made by both plaintiff and defendant. She states that on a number of occasions, customers reviewing defendant's catalog inquired as to whether defendant was the same entity as plaintiff or affiliated with plaintiff.[4]

---

4. Defendant argues that Multimore's declaration is inadmissible hearsay, and the court should therefore disregard it in its entirety, because

Multimore does not state that she herself was ever confused regarding the two companies. However, the court may receive such declara-

Although plaintiff has not submitted substantial evidence of actual confusion, the Court finds that the evidence submitted favors plaintiff. The declarations of Rosenthal and Multimore indicate actual consumer confusion about the source of the products produced by each party. This confusion about the source of the products could lead consumers to buy one company's product thinking it was manufactured by the other or to form opinions about one company based on the products of the other. Although the Court is reluctant to find strong evidence of actual confusion based on the anecdotal evidence of only two declarants, the Court does find some evidence of actual confusion. This factor therefore weighs slightly in favor of plaintiff.

#### 6. Defendant's Intent

■ This factor considers "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang*, 949 F.2d at 583 (quoting *Edison Bros. Stores, Inc. v. Cosmair, Inc.*, 651 F.Supp. 1547, 1560 (S.D.N.Y.1987)). Plaintiff asserts that defendant acted with bad faith because it intended to cause confusion by marketing its products with the Rosenthal name. As evidence of this bad faith, plaintiff points to statements by defendant's representative admitting they were aware of plaintiff's use of the trademark and tradename for many years.

Although Rite Lite's president Alex Rosenthal said at his deposition that Rite Lite had knowledge of plaintiff Rosenthal as a manufacturer of dinnerware, the Court is reluctant to find that these statements are conclusive evidence of bad faith. After all, Rosenthal is the family name of Jacob Rosenthal, founder of Rite Lite, and Alex Rosenthal, the current president of Rite Lite. Moreover, "[p]rior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith and may be consistent with good faith." *Arrow Fastener Co.*, 59 F.3d at 397. In any event, this factor may not be well-

suited to summary disposition. *See Leberman v. John Blair & Co.*, 880 F.2d 1555, 1559–60 (2d Cir.1989); *Horn's, Inc.*, 963 F.Supp. at 326. This factor is therefore a neutral factor.

#### 7. Quality of Defendant's Products

■ To the extent a defendant's product is of inferior quality to a plaintiff's product, the plaintiff's interest in avoiding any confusion is heightened. *See Lambda Elecs. Corp. v. Lambda Tech., Inc.*, 515 F.Supp. 915, 929 (S.D.N.Y.1981). Plaintiff asserts that it has a reputation for manufacturing and distributing very high quality products, and it is concerned that any defects in a Rite Lite product could be attributed negatively to plaintiff. Plaintiff claims that Rite Lite sells many lower priced items made of cheaper materials such as plastic.

Defendant asserts, somewhat indirectly, that its products are of higher quality or at least are more desirable to purchasers of Judaica items. Defendant claims that the Rite Lite company created the Judaica market as it exists today and was the "foremost pioneer in the sale of the so-called 'high end' line of Judaica that was affordable to the mass market." Decl. of Alex Rosenthal at ¶ 20. Defendant states that plaintiff's kiddush cups, seder plates, honey pots, and candlesticks are crystal, whereas traditional ones are mostly silver or silver plated. *See id.* at ¶ 22. Defendant thus seems to imply that plaintiff's products are less desirable than defendant's.

The Court finds that a factual dispute exists on this *Polaroid* factor. Drawing all inferences in the light most favorable to defendant, the Court cannot conclude on summary judgment that Rite Lite's products are inferior to Rosenthal's. However, the Court notes that the good quality of defendant's products may actually increase the likelihood of confusion between plaintiff's and defendant's products. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir.1986). This factor is therefore a neutral factor.

tions to show the declarant's then-existing state of mind. *See Fun–Damental Too, Inc.*, 111 F.3d at 1003–04.

### 8. Sophistication of Buyers

"This final factor recognizes that the likelihood of confusion between the products at issue depends in part on the sophistication of the relevant purchases." *Arrow Fastener Co.*, 59 F.3d at 398. In assessing sophistication, courts should consider "the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *W.W.W. Pharm. Co.*, 984 F.2d at 575 (quotation omitted).

Plaintiff asserts that the sophistication of buyers of the companies' products is not sufficient to prevent likelihood of confusion. Plaintiff says that some of its products are as cheap as $15 and that even the most expensive products, which cost several hundred dollars, are not expensive enough to result in the type of cautious deliberation one would expect with very expensive goods. Plaintiff states that it is clear from defendant Rite Lite's price list that many of its products are relatively inexpensive as well. Defendant does not dispute that both parties' products are relatively inexpensive and that purchasers are not sophisticated.

The Court finds from this undisputed evidence that the relatively low cost of both parties' goods increases the likelihood that consumers will use little care in selecting the products and thus, that they may be confused as to the products' source. This factor therefore weighs in favor of plaintiff.

Considering all of the *Polaroid* factors, as applied to the undisputed facts, the Court finds that there is a likelihood of confusion between plaintiff's products and those of defendant. In making this determination, the Court is mindful that "[t]he bottom line on a motion for summary judgment is not how many factors favor each side but whether a reasonable trier of fact might differ as to likelihood of confusion." *Physicians Formula Cosmetics Inc. v. West Cabot Cosmetics, Inc.*, 857 F.2d 80, 85 (2d Cir.1988). In this case, no reasonable trier of fact could find that there was not confusion. The undisputed facts lead to the conclusion that plaintiff's mark is relatively strong and that the par-

ties' products are similar and already compete with each other in the same market. Although there is not substantial undisputed evidence of actual confusion, actual confusion is not a prerequisite for a finding of confusion under the *Polaroid* test nor is the lack of actual confusion alone a valid ground for a finding of no confusion. *See Lois Sportswear*, 799 F.2d at 875. Moreover, even if the quality of the parties' products and the intent of the defendant were found to favor the defendant, these two findings combined with a lack of actual confusion would not overcome the findings weighing in plaintiff's favor. A reasonable trier of fact could find only that there is a likelihood of confusion between the parties' products.

### *CONCLUSION*

For the reasons discussed, plaintiff's motion for summary judgment on its Lanham Act claim for federal trademark infringement is granted. Defendant is permanently enjoined from using the name "The Rosenthal Judaica Collection" unless the name "Rosenthal" is preceded by the first name "Jacob" or "Alex" presented in a type of the same size, type, and prominence as that used to present "Rosenthal."

The Court was of the understanding that despite plaintiff's request in the complaint for monetary damages, plaintiff's primary goal was to obtain the injunctive relief granted herein. If that is so, this decision is dispositive. If plaintiff wishes to proceed on its claim under § 43(a) of the Lanham Act and its state law claims, however, it should notify the Court of that position within ten days of the date of this Order.

SO ORDERED.